FILED

GREAT

2012 SEP 7 AM 11 57

PATRICK E. DUFFY, CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 09-65-GF-SEH<br>CV 12-25-GF-SEH |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE |
| ROBERT GLENN LONGEE, | OF APPEALABILITY |
| Defendant/Movant. | |

On March 19, 2012, Defendant/Movant Robert Longee ("Longee"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Longee also filed a document titled "Memorandum in Support of Private Administrative Process."

On March 28, 2012, Longee was ordered to amend his § 2255 motion because two of his claims of ineffective assistance of counsel failed to allege facts that could support an inference that he was prejudiced by counsel's performance. Longee responded on May 18, 2012, by making new claims.

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 1

# I. Preliminary Screening

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

# II. Background

On June 22, 2009, a grand jury indicted Longee on one count of aggravated sexual abuse, a violation of 18 U.S.C. § 2241(a), based on the violent rape of a woman confined to a wheelchair. Jurisdiction was predicated on the Major Crimes Act, 18 U.S.C. § 1153(a). Indictment (doc. 8) at 2. Assistant Federal Defender R. Henry Branom was appointed to represent Longee. Order (doc. 6). Branom obtained a psychiatric evaluation to determine Longee's competency to stand trial and his capacity at the time of the offense, Mot. for Competency Exam. (doc. 16); Order (doc. 21), but the report indicated both that Longee was competent and that there was no support for an insanity defense, Report (doc. 27) (under seal).

Jury selection was completed on December 14, 2009. Trial commenced on December 16, 2009. Minutes (docs. 52, 56). On December 17, 2009, the jury found Longee guilty. 2 Trial Tr. (doc. 74) at 237:17-240:4; Verdict (doc. 61).

A presentence report was prepared. On March 29, 2010, Longee was sentenced to serve life in prison. Judgment (doc. 68) at 2.

Longee appealed the reasonableness of his sentence and the denial of his motion for mistrial, which was based on the jury's report that they were "not unanimous" after about two and a half hours of deliberation. On December 23, 2010, the Court of Appeals affirmed his conviction and sentence. Mem. at 5, *United States v. Longee*, No. 10-30085 (9th Cir. Dec. 23, 2010) (doc. 80). On April 25, 2011, the United States Supreme Court denied Longee's petition for writ of certiorari. *Longee v. United States*, __ U.S. __, 131 S. Ct. 2166 (2011).

Longee timely signed his original § 2255 motion and deposited it in the prison mail system on March 8, 2012. Mot. § 2255 at 20; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988); 28 U.S.C. § 2255(f)(1). *See also Mayle v. Felix*, 545 U.S. 644, 663 (2005) (discussing application of Fed. R. Civ. P. 15(a)(1) in cases under 28 U.S.C. §§ 2254 and 2255); *United States v. Hayman*, 342 U.S. 205, 219 (1952).

### III. Allegations and Analysis

All claims in the original and in the amended motion are addressed here.

### A. Extradition

Even if Longee's arguments regarding extradition from the authority of his

tribe were correct – and they are not, *see United States v. Drapeau*, 414 F.3d 869, 877 (8th Cir. 2005) – "[t]he jurisdiction of the court in which the indictment is found is not impaired by the manner in which the accused is brought before it." *Lascelles v. Georgia*, 148 U.S. 537, 544 (1893), *quoted in Harden v. Pataki*, 320 F.3d 1289, 1296 (11th Cir. 2003). The United States had jurisdiction under 18 U.S.C. § 1153(a). Longee's first claim, Mot. § 2255 (doc. 84) at 5, Mem. (doc. 91) at 33-34, is denied.

## B. Treaties

Longee's second claim states merely "[t]reaty laws supporting this under the State of Montana and under the Constitution of my Tribe." Mot. § 2255 at 6. Possibly this assertion refers back to the extradition claim. Regardless, this Court is not aware of any treaty, law, or constitution capable of defeating the criminal jurisdiction of this Court under 28 U.S.C. § 106 and 18 U.S.C. §§ 1153(a), 3231, and 3242. This claim is denied.

## C. "Equity" Jurisdiction

Longee's third claim suggests his prosecution had something to do with the "attachment" of "equity jurisdiction." It did not. This claim, Mot. § 2255 at 8, is denied.

## D. Ineffective Assistance of Trial Counsel

Longee contends that trial counsel was ineffective in various respects. *Strickland v. Washington*, 466 U.S. 668 (1984), governs such claims. First, Longee must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Second, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 1. Transcript

Longee contends that Branom failed to "challenge the accuracy of my transcripts due to words being changed." Mot. § 2255 at 9. Although he was given an opportunity to amend his motion to explain how he was prejudiced, Order (doc. 87) at 2, Longee identifies none. This Court presided over the trial. The transcript accurately reflects the testimony and evidence introduced as well as the statements and arguments of counsel. This claim is denied.

### 2. "Differences"

Longee claims that Branom failed to "notify the court when differences arise between defendant and counsel." Mot. § 2255 at 11. Counsel has no obligation to inform the Court whenever "differences arise" between himself and his client. *Cf. Morris v. Slappy*, 461 U.S. 1, 14 (1983). Nor does Longee say what these differences

were or how they affected his case. This claim is denied.

### 3. "Work[ing] With the Prosecution"

Longee claims he "was let known by other clients of the public defender . . . that he works with the prosecution in helping get plea agreements of guilty or guilty verdicts for favorable help in other cases." Mot. § 2255 at 11. Longee was specifically ordered to amend this claim, but he alleges no new facts. There is no reason to believe that Branom did anything inappropriate or prejudicial to Longee. Defense attorneys frequently "work[] with the prosecution" when they represent a client who agrees to cooperate against other defendants. The fact is unremarkable and beneficial to those clients. This claim is denied.

### 4. Photographs

Longee claims counsel should have moved to suppress photographs of the crime scene because they were taken ten months after the crime and so were "tainted evidence." Mot. § 2255 at 13. The jury knew the photographs they saw were taken ten months after the crime because the photographs taken on the night of the crime did not produce discernible images. 1 Trial Tr. (doc. 73) at 169:7-169:13. Two witnesses testified that the photographs accurately depicted the location of the buildings in question and that, other than seasonal changes, there was no discrepancy

between the appearance of the scene in September 2008 and in July 2009. *Id.* at 58:12-18, 169:14-20. Counsel's performance was not deficient and he did not prejudice Longee.

### 5. Failure to Investigate

Longee's amended motion centers on Branom's failure to explore the possibility that Chaser "fabricated the story of her sexual assault." He suggests that no assault occurred; that, if it did occur, he did not do it; or, if it did occur, the sexual encounter was consensual. And he states that as many as 19 character witnesses could have attested to Chaser's lack of credibility. Am. Mot. (doc. 90) at 5, 6; Mem. (doc. 91) at 14-15; Mem. Exs. B (doc. 91-2), C (doc. 91-3).

Chaser's identification of Longee was not free of doubt. As the jury knew, the attack occurred in the dark. Chaser was intoxicated and upset by the attack, and her glasses had been knocked off. Chaser's testimony initially indicated that she could not identify Longee; she told her grandson that she had been raped by "'[t]hat guy that was standing across the street over there.'" 1 Trial Tr. at 95:7-10. If that was true, she only identified Longee as the culprit after he was apprehended. When Branom asked Chaser when she "identified" Longee, however, she said, "When I – when I looked up. When we stopped behind that empty shed thing." *Id.* at 100:21-

24; *see also* Mem. Ex. C (doc. 91-3).

Most significant to this claim, however, are the matters Longee fails to mention. First, the witnesses who saw Chaser shortly after the assault testified she was "crying." 1 Trial Tr. at 32:25, 40:25, 51:22. When Chaser arrived at the hospital, she was "hysterically crying," "[c]overing her face," was inconsolable, and did not want anyone to touch her even for purposes of medical examination. *Id.* at 105:24-106:4.

Second, Longee fails to mention that he made three statements to law enforcement before trial. When he was arrested, he told Officer Black Dog the blood on his shirt was his own. 1 Trial Tr. at 52:15-21. The day after the incident, he told Agent DeVantier that he had never been alone with Chaser, did not do anything to her, and that the blood on his shirt, pants, shorts, and groin was his and was caused by a cut on his finger. *Id.* at 179:16-20, 180:5-10. And, about three weeks after that, Longee agreed with DeVantier that "when you drink, you can do silly things; and that was his choice to drink and mess up," yet he maintained his denial of any involvement with Chaser. *Id.* at 181:14-22.

Finally, Longee fails to mention that, when he was arrested, he had Chaser's blood on his shirt, his right hand, his boxers, and his penis. 1 Trial Tr. at 153:12-17.

Longee's own statements contradict his late-emerging theory of a consensual sexual encounter. The hypothesis that Longee did not have a sexual encounter with Chaser was ruled out by the DNA analyses. Even if all 19 witnesses had testified adversely to Chaser's character and credibility, their testimony would not change the DNA results or Longee's own statements. Branom's "refus[al]," Mem. at 8 n.*, to pursue the defenses Longee outlines was neither deficient nor prejudicial. There was no realistic hope of negating an assault, establishing a consensual encounter, or explaining away the presence of Chaser's blood on Longee's penis. This claim is denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).

None of Longee's claims makes a showing with any substance to it that he was deprived of a constitutional right. Longee's claims relating to extradition, treaties, and jurisdiction are frivolous. He identifies nothing in the transcript that was altered, and the transcript is perfectly consistent with this Court's recollection of the testimony and evidence. Defense counsel has no obligation to contact the Court on any occasion when "differences" arise between himself and his client. Longee's claim that his attorney "works with the prosecution in helping get plea agreements of guilty or guilty verdicts for favorable help in other cases" alleges nothing remarkable, and, despite an opportunity to amend the claim, Longee failed to provide any facts that would support a claim of ineffective assistance or conflict of interest. The jury knew the photographs of the crime scene were taken ten months after the offense due to technical error in the photographs taken on the night in question. Finally, Longee's claim that counsel failed to adequately investigate the case centers on witnesses who might have challenged the victim's credibility. But Longee's motion fails even to mention the testimony at trial, which showed that the victim was very upset shortly after the incident and was hysterical at the hospital. And he fails to mention the most crucial evidence in the case: his own statements, in which he repeatedly denied any

involvement at all with Chaser, and the fact that Chaser's blood was identified on his shirt, his right hand, his boxer shorts, and his penis. No matter how many people had testified about Chaser's lack of credibility, Longee had no realistic hope of overcoming the physical evidence in the case.

There is no reason to encourage further proceedings. A COA is denied as to all issues.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Longee's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (docs. 84, 90) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Longee files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 12-25-GF-SEH are terminated and shall close the civil file by entering judgment in favor of the United States and against Longee.

DATED this 7th day of September, 2012.

Sam E. Haddon
United States District Court